**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ARMONI MUSAD JOHNSON, | No. 4:23-CV-00762 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| BLUE SHIRT DAVIS, | |
| Defendant. | |

**ORDER**

**APRIL 8, 2025**

Now pending before the Court are cross-motions for summary judgment on pro se inmate Plaintiff Armoni Johnson's First Amendment retaliation claim against prison guard Defendant Blue Shirt Davis,[1] and Mr. Johnson's motions for an adverse inference and for oversight of the record in cross actions.[2] On January 14, 2025, Magistrate Judge Martin C. Carlson entered a Report and Recommendation ("R&R") recommending that Defendant Blue Shirt Davis's motion for summary judgment be granted and Mr. Johnson's motion for summary judgment be denied.[3]

I have conducted a *de novo* review of Judge Carlson's R&R considering Mr. Johnson's objections thereto and find no error.[4] A number of Mr. Johnson's objections focus on allegations that Judge Carlson was biased against him or cite to rulings and

---

[1]   Docs. 48, 50.
[2]   Docs. 66, 68.
[3]   Doc. 62.
[4]   28 U.S.C. § 636(b)(1)(c); Doc. 65.

events that occurred in other cases he has brought in this Court.[5] Mr. Johnson's only evidence of Judge Carlson's bias is the ruling against him, which is insufficient.[6] Furthermore, the litigation of other cases does not pertain to this case.

Mr. Johnson's relevant objections are that Judge Carlson erred by concluding that he had admitted to disobeying an order,[7] and that the punishment that underlies his retaliation claim would have been imposed even without his protected activities.[8]

To briefly set out the most pertinent facts, Mr. Johnson stated in his deposition that Mr. Davis ordered him to submit to an additional search after he was initially searched pursuant to normal procedures before leaving the prison kitchen.[9] Mr. Johnson did not believe that the additional search was necessary because he had already been searched; he instead assumed that Mr. Davis "was trying to harass [him]."[10] So Mr. Johnson ignored the order and returned to his housing unit.[11] Mr. Davis then filed a misconduct report which resulted in Mr. Johnson's termination as a kitchen employee.[12] This incident came shortly after Mr. Johnson filed a pair of grievances against Mr. Davis for allegedly submitting a negative report about him to the parole board and harassing him in the kitchen.[13]

---

[5]  Doc. 65 at 2, 3-4 (discussing factual admissions, submissions from 2018, and accusing Judge Carlson of bias).
[6]  *See Wharton v. Superintendent Graterford SCI*, 95 F.4th 113, 126 (3d Cir. 2024).
[7]  Doc. 65 at 5-9.
[8]  *Id.* at 9-11.
[9]  Doc. 51-6 at 9:22-25; 11:1-21.
[10]  *Id.* at 11:4-12.
[11]  *Id.* at 11:17-24.
[12]  Docs. 51-7, 51-9.
[13]  Docs. 51-2, 51-3.

The Court agrees with Judge Carlson that Mr. Johnson has not provided sufficient evidence to create a genuine dispute of material fact regarding the legitimacy of Mr. Davis's order or the misconduct report that followed.[14] The following analysis focuses narrowly on resolving Mr. Johnson's objections to the R&R and therefore eschews setting out broad legal standards unnecessarily. Judge Carlson correctly stated the applicable law, to which no one objects.

A prison official defendant can defeat a retaliation claim by showing that he "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."[15] "Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."[16] Here, the undisputed record establishes that Mr. Davis ordered Mr. Johnson to submit to a search in a situation in which inmates were required to submit to searches.[17] Mr. Johnson adduces no evidence to show that the additional search was unnecessary, overbroad, or burdensome, and a thorough and even potentially duplicative search of inmates leaving a sensitive area serves a valid penological interest.

---

[14]  Mr. Johnson repeatedly cites the motion to dismiss standard in his briefing and argues that his allegations should be taken as true. Once a case reaches summary judgment, the allegations in a complaint must be supported by competent evidence. Fed. R. Civ. P. 56(c)(1).

[15]  *Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002) (quoting *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001)).

[16]  *Carter*, 292 F.3d at 158 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

[17]  Doc. 51-6 at 9:22-25.

Moreover, the Court is wary of reading too much into Mr. Davis's order given that Mr. Johnson is a serial litigant. Considering the torrent of grievances and suits he has filed, essentially any adverse action taken against Mr. Johnson could be cast as retaliatory. But a particularly litigious inmate should not be permitted "to insulate himself from actions adverse to him that a public actor should take."[18] His personal feeling that Mr. Davis was "trying to harass [him]" does not make it so.[19]

Ultimately, even if it was retaliatory, the adverse consequences of Mr. Davis's order were entirely *de minimis* and therefore not actionable.[20] Had Mr. Johnson followed the order, he would have been briefly inconvenienced while he awaited a duplicative search. And he had been unexpectedly excused from his shift that day, so he didn't have anywhere else to be.[21] Assuming he carried no contraband, Mr. Davis would have completed the search and sent him on his way, at worst robbing Mr. Johnson of a few minutes of free time.[22]

---

[18]  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[19]  *See* Doc. 51-6 at 11:8-12.

[20]  *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)).

[21]  Doc. 51-6 at 9:15-21.

[22]  Mr. Johnson suggests that Mr. Davis frequently engaged in harassment of this type. *See* Doc. 57-1 at 1 (Decl. of Martin Hudson stating that "Mr. Davis is a staff member that constantly lied on inmates, wrote false misconducts on the employed, harassed inmates and even threatened with physical assault."). A pattern of otherwise *de minimis* harassment can be enough to support a retaliation claim. *See Brennan v. Norton*, 350 F.3d 399, 422 n.17 (3d Cir. 2003). But the record in this case does not include any other concrete examples of harassment that would support this theory of liability. Mr. Johnson's allegation that Mr. Davis fabricated a report to parole lacks evidentiary support, *see* Doc. 49-3 at 2-3 (progress report to parole describing Mr. Johnson's work as "average" but "lack[ing] initiative," and "do[ing] the minimum," and his behavior as "fine but . . . argumentative at the drop of a hat"), and his claim that Mr. Davis said "I got you" after submitting the progress report only appears in briefing and unsworn grievance forms, *see* Doc. 49-4 at 2.

In any event, Mr. Johnson does not argue that he should win because the *order* was retaliatory.[23] Instead, he complains that Mr. Davis filed a misconduct report against him for ignoring the order which ultimately resulted in the loss of his prison job. There is no dispute that Mr. Johnson ignored Mr. Davis's order; Mr. Johnson just says that he did so because he believed it was illegitimate. But an inmate has no right to refuse a direct order, even if he believes it is retaliatory.[24] The misconduct report cited only Mr. Johnson's insubordination, and that was the basis of Mr. Johnson's punishment.[25] There is no doubt that any prison official would have submitted a misconduct report if an inmate ignored his or her direct order, so there is no basis to conclude that doing so here was retaliatory. Accordingly, Mr. Davis is entitled to summary judgment and Judge Carlson did not err.

Mr. Johnson's other two motions are entirely meritless. His request for an adverse inference appears to be based on his allegation that Judge Carlson is biased against him and requests that his "objections be sustained and summary judgment be ruled in favor of plaintiff."[26] I have already held that Judge Carlson is not biased, and that would be irrelevant to a properly framed motion for an adverse inference, which in

---

[23]  *See* Doc. 67 at 2 (clarifying that Mr. Johnson "sued for . . . the retaliatory misconduct filed after plaintiff filed grievance to investigate the defendant").

[24]  *Conway v. Goins*, 48 F. App'x 597, 598 (8th Cir. 2002) (citing *Smith v. Erickson*, 961 F.2d 1387, 1388 (8th Cir. 1992) (per curiam)); *Cicio v. Kourofsky*, No. 08-CV-0491, 2010 WL 5138549, at *4 (N.D.N.Y. Feb. 18, 2010) (citing *Torres v. Selsky*, No. 02-CV-0527, 2005 WL 948816, at *8 (N.D.N.Y. Apr. 25, 2005)); *Palmore v. Hornberger*, No. 18-CV-0994, 2019 WL 4199959, at *2 (W.D. Pa. Sept. 5, 2019).

[25]  *See* Docs. 51-7, 51-9; *Watson*, 834 F.3d at 425 ("[M]ost prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence.").

[26]  Doc. 67 at 3.

any case cannot provide the relief Mr. Johnson requests. Mr. Johnson's request for "oversight of the record" attempts to challenge the legality of his sentence by asking this Court to direct rulings in his collateral appeals, which is impermissible in this Section 1983 case.[27]

**THEREFORE**, **IT IS HEREBY ORDERED** that:

1.    Magistrate Judge Carlson's R&R (Doc. 62) is **ADOPTED**;

2.    Mr. Johnson's motion for summary judgment (Doc. 48) is **DENIED**;

3.    Mr. Davis's motion for summary judgment (Doc. 50) is **GRANTED**;

4.    Mr. Johnson's motions for an adverse inference (Doc. 66) and oversight of the record (Doc. 68) are **DENIED**;

5.    **JUDGMENT** is entered in favor of Defendant;

6.    The Clerk shall **CLOSE** this case.

                                        BY THE COURT:


                                        *s/ Matthew W. Brann*
                                        Matthew W. Brann
                                        United States District Judge

---

[27] *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that an inmate may not challenge the validity of his conviction or sentence in a Section 1983 case).